## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TOBACCO ROAD INCORPORATED, | ) | Case No. 13 B 18015 |
|  | ) |  |
| Debtor. | ) | Hon. Carol A. Doyle |
|  | ) |  |
|  | ) |  |

## <u>NOTICE OF MOTION</u>

To:    See attached Service List

PLEASE TAKE NOTICE that on **Wednesday, May 8, 2013, at 10:00 a.m.**, or as soon thereafter as counsel may be heard, we will appear before United States Bankruptcy Judge Carol A. Doyle, or any other judge sitting in her stead, in Courtroom 742 of the Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, an then and there present the attached **DEBTOR'S MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROECTION; (III) SCHEDULING FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**, at which time and place you may appear as you see fit.

> **TOBACCO ROAD INCORPORATED**
> **Debtor and Debtor-in-Possession**
>
> By:    /s/ Matthew E. McClintock
>          One of Its Proposed Attorneys

GOLDSTEIN & MCCLINTOCK LLLP
Matthew E. McClintock
Harold D. Israel
208 S. LaSalle Street, Suite 1750
Chicago, Illinois  60604
Telephone: (312) 337-7700
Facsimile:  (312) 277-2305

## CERTIFICATE OF SERVICE

I, Matthew McClintock, an attorney, certify that I caused a copy of the foregoing **NOTICE OF MOTION** and **DEBTOR'S MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROECTION; (III) SCHEDULING FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**, to be served on the parties listed on the attached service list by facsimile and by the Court's ECF system to those entities entitled to electronic service, on    May 3, 2013    .

By:      /s/ Matthew McClintock

## <u>GENERAL SERVICE LIST</u>

| | |
|---|---|
| Patrick S. Layng<br>U.S. Trustee (Region 11)<br>219 S. Dearborn Street, Suite 873<br>Chicago, IL  60604<br>Fax:  312-886-5794 | Internal Revenue Service<br>Mail Stop 5010 CHI<br>230 S. Dearborn Street<br>Chicago, IL 60604<br>Fax:  312-556-2826 |
| Richard F. Friedman<br>Nicole Castillo Hasan<br>Neal & Leroy, LLC<br>203 N. LaSalle Street, Suite 2300<br>Chicago, IL  60601<br>Fax: 312-641-5137 | Department of the Treasury<br>Internal Revenue Service<br>Centralized Insolvency Operations<br>P.O. Box 21126<br>Philadelphia, PA 19114<br>Fax:  215-516-2015 |
| | Illinois Department of Revenue<br>Bankruptcy Section<br>Level 7-425<br>100 W. Randolph Street<br>Chicago, IL  60601<br>Fax:  312-814-3589 |

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOBACCO ROAD INCORPORATED, | ) | Case No. 13 B 18015 (CAD) |
| | ) | |
| Debtor. | ) | |
| | ) | Hearing:  May 8, 2013, at 10:00 a.m. |
| | ) | |

### DEBTOR'S MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROECTION; (III) SCHEDULING FINAL HEARING; AND (IV) GRANTING RELATED RELIEF

Tobacco Road, Inc., as debtor and debtor-in-possession herein (the "*Debtor*"), by this motion (the "*Motion*"), pursuant to sections 361 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "*Bankruptcy Code*"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "*Local Rules*"), seeks entry of interim and final orders (i) authorizing use of the Debtor's cash collateral, (ii) providing adequate protection to the Lender (as defined hereinafter), (iii) scheduling a final hearing (the "*Final Hearing*"), and (iv) granting other related relief as necessary.  In support of this Motion, the Debtor submits the proposed Cash Collateral Budget (the "*Budget*") attached as <u>Exhibit A</u> to the proposed interim order granting the Motion (the "*Proposed Interim Order*") and further states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-2.

## BACKGROUND

3.       On April 29, 2013 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Case*").

4.      The Debtor continues to operate its business and manage its properties as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      No trustee, examiner, creditors' committee, or other official committee has been appointed in the Debtor's chapter 11 case.

6.      The Debtor is a non-profit corporation, which owns and operates the Harold Washington Cultural Center (the "*Cultural Center*") in the "Bronzeville" neighborhood on Chicago's south side.  The Cultural Center's mission is to preserve and protect the rich, diverse culture and history of African Americans through the education and professional development of Chicago's youth.  Its core values are leadership, unity, commitment, integrity, and education of excellence.  The Cultural Center's revenues, including those from theatrical productions put on by Broadway in Bronzeville—the Debtor's acclaimed in-house theatre company—support the Debtor's charitable purposes.

7.      The goal of the Debtor's charitable programs is to carry out the Cultural Center's mission by increasing access to, and providing career opportunities in, theatre and the arts for

2

underprivileged youth in the Chicago metropolitan area.  Its programs include, among others:  (i)

Endure Productions (whose mission is to use the transformational power of music and dance to

inspire audiences through high-quality dance and musical productions and to train and empower

underprivileged youth and adults (ages 12–18) in the Chicago metropolitan area to find careers in

the performing arts); (ii) Broadway in Bronzeville (the Cultural Center's in-house production

company that similarly helps to get troubled youth "off the street and onto the stage" by providing

an outlet for aspiring artists to develop their craft though the production of live theater); and (iii)

M.A.D.D. Rhythms TAP Dance Academy (whose mission is to preserve, promote, and contribute

to the art form commonly known as tap).

8.      The Debtor funds its charitable programs through revenue generated from ticket

sales from its Broadway in Bronzeville productions—the Debtor's primary source of revenue—as

well as from community donations and grants.  In addition, the Debtor receives monthly rental

revenue from a long-term tenant and additional intermittent rental revenue from third parties who

lease portions of the Cultural Center for events, such as concerts or weddings (collectively, the

"*Rental Revenue*").

9.      Although the Debtor has expended great effort to substantially improve its

financial performance in recent months (to the point that it is currently profitable and projects to

remain substantially cash-flow-positive for the foreseeable future), its efforts have been

significantly hindered by the existence of contentious foreclosure litigation (the "*Foreclosure

Litigation*").

10.     The Foreclosure Litigation was initially commenced on August 26, 2009, by

ShoreBank ("*ShoreBank*") in connection with a $1,400,000 loan (the "*ShoreBank Loan*") that

ShoreBank made to the Debtor pursuant to a promissory note dated March 19, 2004 (as amended

from time-to-time, the "*Promissory Note*").  The Promissory Note is allegedly secured by a

mortgage, dated March 19, 2004, (the "*Mortgage*"), which contains an assignment of rents clause

(the "*Assignment Provision*").  The Board of Trustees of Community College District No. 58

("*City Colleges*" or the "*Lender*") claims to currently hold the beneficial interest in the ShoreBank

Loan.

11.     City Colleges also purports to hold the beneficial interest in certain grant

agreements pursuant to which the City of Chicago provided funding to the Debtor in connection

with the construction of the Cultural Center.[1]  The amount owed, if any, on account of the Grant

Agreements is disputed, and may be the subject of litigation in this case if the issue cannot be

consensually resolved.

## DISCUSSION

### *The Need for Use of Cash Collateral*

12.     The Debtor has an immediate need to use the Lender's cash collateral (as that term

is defined in section 363 of the Bankruptcy Code, the "*Cash Collateral*") in order to assure the

orderly administration of its bankruptcy estate.  Due to the Assignment Provision, the Lender

arguably can assert a security interest in the Rental Revenue.[2]  Without use of the Lender's Cash

Collateral as set forth in the Budget, the Debtor will not be able to pay its direct operating expenses.

Inability to use the Cash Collateral on an interim basis will likely result in cessation of the Debtor's

---

[1]     Specifically, on June 27, 1996, the Debtor and the City of Chicago entered into a grant agreement in the amount of $250,000 (the "*Phase IA Grant Agreement*").  On October 23, 1998, the Debtor and the City of Chicago entered into a second grant agreement and modified the June 27 agreement in the amount of $817,155.98 (the "*Phase IB Grant Agreement*").  On December 23, 1999, the Debtor and the City of Chicago entered into a third grant agreement in the amount of $2,832,844 (the "*Phase II Grant Agreement*").  Finally, on December 4, 2002, the Debtor and the City of Chicago entered into a fourth grant agreement in the amount of $3,500,000 (the "*Phase III Grant Agreement*"; and together with the Phase 1A Grant Agreement, the Phase 1B Grant Agreement, and the Phase II Grant Agreement, the "*Grant Agreements*").

[2]     The Debtor maintains that the Lender's security interest under the Assignment Provision does not attach to any other revenues generated from the Debtor's use of the Cultural Center, including ticket and concession sales for performances staged at the Cultural Center.

4

ongoing operations and will cause irreparable harm to the Debtor's estate.  Put simply, the Debtor

cannot continue operations or its restructuring effort absent use of the Cash Collateral.

### *Compliance with Local Rule 4001-2*

13.     Rule 4001-2 of the Local Rules requires that certain provisions of cash collateral

requests be highlighted and that the Debtor must provide justification for the inclusion of such

highlighted provisions.  No separate disclosure or discussion is required with respect to Local

Rules 4001-2(A)(2)(a)–(j) as there are no provisions in the Proposed Interim Order that are

implicated by the requirements therein.  *See* Local Rule 4001-2(A)(2)(a)–(j).

14.     A debtor's cash, however, "is the life's blood of the business," and the bankruptcy

court must assure that such life's blood "is available for use even if to a limited extent."  *In re*

*Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981).  Accordingly, bankruptcy courts typically

authorize debtors to use cash collateral to continue their operations as long as the interests asserted

by secured parties are adequately protected.  *See* 11 U.S.C. § 363(e).

### *Adequate Protection*

15.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may

not use cash collateral without the consent of the secured party or court approval.  As will further

be demonstrated at the hearing on this Motion, regardless of whether the Lender consents to the

Debtor's use of Cash Collateral, the Lender will be adequately protected for the reasons set forth

below.

16.     As adequate protection for the Lender, the Debtor shall provide the Lender, to

secure payment of an amount equal to any diminution in value of the Lender's collateral, a security

interest in and lien upon all rental income that is subject to the Assignment Provision and any

proceeds thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, senior

to any other security interests, liens, or encumbrances, subject only to, in the following order of priority: (a) valid, perfected, and enforceable prepetition liens which are senior to the Lender's respective liens or security interests as of the Petition Date, (b) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. § 1930, (c) the amount of the Debtor's professionals' fees and disbursements accrued as of the date of the termination of the Debtor's use of Cash Collateral.[3]

17.     Pursuant to section 361 of the Bankruptcy Code, replacement liens in the nature of those proposed by the Debtor in this instance serve as adequate protection.  11 U.S.C. § 361; *see also In re Am. Consol. Transp. Companies, Inc.*, 09-BK-26062, 2009 WL 3571268 (Bankr. N.D. Ill. Oct. 28, 2009) ("A debtor may provide adequate protection through periodic cash payments, replacement liens, or 'the indubitable equivalent' of the creditor's interest.").

### *Interim Approval of the Use of Cash Collateral Should Be Granted*

18.     Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fourteen (14) days after the service of such motion.  Upon request, however, the Court is empowered to conduct a preliminary hearing on the motion and authorize interim use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

19.     Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that the Court conduct a preliminary hearing as soon as practicable to enter the Proposed Interim Order authorizing the Debtor to use the Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Budget (subject to a 15% variance as set forth in the Proposed Interim Order) pending the final hearing.

---

[3]     As set forth in paragraph 5 of the Proposed Interim Order, the Budget shall include payments to a professional fee escrow.

20.     Courts have recognized that the preservation of the going concern value of a secured lender's collateral constitutes adequate protection of such creditor's interest in the collateral.  *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution in the value of collateral and the debtor can operate profitably postpetition, then the secured creditor is adequately protected); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditor's secured position would be enhanced by the continued operation of the debtor's business).  The ability of the Debtor to finance, through the use of Cash Collateral, its ongoing operations as it restructures its indebtedness and business for the benefit of all creditor constituencies is in the best interests of the Debtor, all its creditors, and its estate.

21.     In this case, authorization of the use of cash collateral is especially appropriate given that the Budget indicates that Debtor's cash position will increase throughout the case, meaning that it is unlikely that there will be any diminution to the value of the Lender's cash collateral.  *See In re Karl A Neise, Inc.*, 16 B.R. 602, 603 (Bankr. S.D. Fla. 1981) (where a secured creditor's interest is being maintained and cash collateral is to be used to meet operating and overhead expenses, a debtor may provide adequate protection for the use of proceeds derived from prepetition assets by granting a secured creditor a replacement lien on postpetition assets); *see also RTC v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (the focus of the adequate protection requirement is only to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996).  The relief requested herein is necessary in order to avoid immediate and irreparable harm and prejudice to the estate and to all parties-in-interest in this chapter 11 case.

22.    The interests of the Lender in the Cash Collateral will therefore be adequately protected pursuant to the Proposed Interim Order.  Pending the final hearing, this Motion should be granted on an interim basis, on the terms set forth in the Proposed Interim Order, in order to maximize the value of the estates, and to prevent irreparable harm to the Debtor prior to the final hearing.

### *Request for a Final Hearing*

23.    Finally, pursuant to Bankruptcy Rule 4001(c)(2), the Debtor respectfully requests that this Court set a date for the Final Hearing.  The Debtor requests that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for filing objections, if any, by first class mail upon the Lender, the United States Trustee, the Debtor's twenty (20) largest creditors, and any party having filed a request to receive service in this chapter 11 case.  The Debtor requests that the Court consider such notice of the final hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

### NOTICE

24.    Notice of this Motion has been given via facsimile and/or overnight mail to (a) the Office of the United States Trustee and (b) counsel to the Lender, (c) the Internal Revenue Service, and (d) the Illinois Department of Revenue.  Notice of this motion has been given via regular U.S. Mail to the creditors on the list of the Debtor's twenty (20) largest unsecured claims.  In light of the nature of the relief requested, the Debtor respectfully submits that that no further notice is required.

8

WHEREFORE, the Debtor respectfully requests that this Court (a) conduct a hearing on this Motion; (b) enter an Interim Order substantially in the form submitted herewith; (c) schedule a final hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

Respectfully submitted,
**TOBACCO ROAD INCORPORATED**

Dated:  May 3, 2013

By: _/s/ Matthew McClintock_____
One of Its Proposed Attorneys

GOLDSTEIN & MCCLINTOCK, LLLP
Matthew E. McClintock
Harold D. Israel
208 S. LaSalle St., Suite 1750
Chicago, Illinois  60604
Telephone: (312) 337-7700
Facsimile:  (312) 277-2305

*Proposed Counsel for the Debtor and*
*Debtor in Possession*

4842-9746-4339, v.  2